601 So.2d 1286 (1992)
REHABILITATION ADVISORS, INC., Appellant,
v.
Barbara FLOYD, et al., Appellees.
No. 91-2688.
District Court of Appeal of Florida, Fifth District.
July 2, 1992.
*1287 William M. Rishoi and Philip J. Snyderburn of Snyderburn, Rishoi & Swann, Winter Park, for appellant.
H. Scott Bates of Morgan, Colling & Gilbert, P.A., Orlando, for appellee Barbara Floyd.
COBB, Judge.
The appellant, Rehabilitation Advisors, Inc. (Rehab), appeals the trial court's entry of a directed verdict in favor of the appellee, Barbara Floyd.
Barbara Floyd and Betty Reid established Rehab in 1981, but their personal and professional relationship deteriorated over the years, causing Floyd to agree to sell her interest in Rehab to Reid. On October 1, 1990, Floyd and Reid executed a sale agreement.
On November 7, 1990, Rick Hodges of the Claims Center, informed Floyd that Rehab was not on their new approved list of companies to receive referrals. For several years, Rehab had received approximately 70% of its revenues from Claims Center referrals. Floyd testified that she had told Reid about the change at the Claims Center that same day and told her to call Hodges. According to Reid, Floyd told her that the meeting went fine and that she was to call Hodges "about the change in highlighting certain counselors to get cases."
On November 14, 1990, Rehab redeemed Floyd's stock and the parties executed a non-compete agreement. The agreement for redemption of corporate stock provided for a full disclosure. Reid talked to Hodges in mid-January and discovered that Rehab was not on the approved list and would no longer be receiving referrals from the claims center. Rehab then filed a complaint against Floyd, alleging common law fraud, breach of fiduciary duty, and breach of contract. Floyd filed an answer, affirmative defenses, and counterclaim for the accounts receivable which were payable to her as part of the stock redemption.
The trial court granted Floyd's motion for directed verdict[1] on all counts, finding *1288 that the October 1, 1990 agreement was a valid enforceable contract which rendered Floyd's conduct after October 1st immaterial and entered a final judgment against Rehab on the complaint and in favor of Floyd on the counterclaim.
Floyd, pursuant to her status as an officer and director of Rehab, had the fiduciary duty to inform Rehab of the Claims Center's decision to remove Rehab from their approved list. Corporate directors owe a fiduciary duty to the corporation and to the shareholders and must act in good faith and in the best interest of the corporation. Under the Florida Statutes, a director is under an obligation to discharge her duties in good faith, with the care an ordinarily prudent person in a like position would exercise, and in a manner she reasonably believes to be in the best interest of the corporation. § 607.0830(1), Fla. Stat. (1991). In the recent decision of Cohen v. Hattaway, 595 So.2d 105 (Fla. 5th DCA 1992), this court held that:
These fiduciary obligors (directors and officers) cannot, either directly or indirectly, in their dealings on behalf of the fiduciary beneficiary with others, or in any other transaction in which they are under a duty to guard the interests of the fiduciary beneficiary, make any profit or acquire any other personal benefit or advantage, not also enjoyed by the fiduciary beneficiary, and if they do, they may be compelled to account to the beneficiary in an appropriate action... . A fiduciary obligor is not precluded from contracting with this beneficiary. A purchase, by a fiduciary obligor of property belonging to the fiduciary beneficiary is not void but rather is voidable at the option of the fiduciary beneficiary, with the burden of showing the validity of such a contract and the fairness and honesty of such a transaction belonging on the fiduciary obligor. [Cites omitted].
Floyd owed a fiduciary duty to Rehab to act in good faith and in the best interest of the corporation. It logically follows that Floyd had a duty to inform Rehab (in reality Reid) of the Claims Center's decision to eliminate Rehab from its approved list. Viewing the evidence in favor of Reid, Floyd did not tell her that Rehab was no longer on the approved list and would not be receiving referrals from the Claims Center. Floyd's failure to inform Rehab of the Claims Center's decision would constitute a breach of her fiduciary duty. The existence of an agreement to sell her interest in the corporation did not extinguish her fiduciary duties to Rehab as an officer and director. The trial court erred in granting a directed verdict on this count.
The trial court also entered a directed verdict as to the breach of contract count in this case, finding a binding and enforceable contract existed between Reid and Floyd prior to the receipt of information by Floyd which was allegedly not disclosed to Reid. The October 1st agreement was a binding and enforceable contract between Floyd and Reid. However, the November 14th agreement was binding and enforceable between Floyd and Rehab. This agreement provided in part:
None of the representations made by seller ... omit any material fact the omission of which would be misleading.
Failing to inform Rehab of the Claims Center's decision to drop Rehab from the approved list was material. The value of stock in Rehab necessarily depends on the ability of Rehab to produce a flow of revenue in the future. The loss of referrals which had constituted 70% of Rehab's business impacted the value of Floyd's stock. The loss of these revenues is a material fact which Floyd had the contractual duty to disclose. The valid and enforceable contract between Floyd and Reid regarding the sale of Floyd's interest in Rehab did not contain a "misrepresentation clause." However, when Floyd signed the November 14 agreement with Rehab, she warranted that she did not misrepresent the value of her stock. Floyd's argument that the existence of the first agreement ensures that her subsequent actions are immaterial is ludicrous. She signed the second agreement *1289 with Rehab, promising that she did not make any misrepresentations. This agreement is enforceable. Taking the evidence in favor of Rehab, Floyd did fail to inform it of a material fact. The trial court improperly directed a verdict in favor of Floyd on the breach of contract count.
The trial court correctly dismissed the count for fraud. The evidence was insufficient, even when viewed in favor of Rehab, to support a finding of actual, as opposed to constructive, fraud. Compare Allie v. Ionata, 466 So.2d 1108, 1110 (Fla. 5th DCA 1985), aff'd, 503 So.2d 1237 (Fla. 1987).
REVERSED.
GOSHORN, C.J. and DIAMANTIS, J., concur.
NOTES
[1] Floyd should have moved for involuntary dismissal, not for directed verdict since this was a bench trial. Since the decision below is in the form of a directed verdict, the facts and all reasonable inferences therefrom have been accepted as those most favorable to the appellant. Clemmons v. American States Insurance Co., 412 So.2d 906 (Fla. 5th DCA), rev. denied, 419 So.2d 1196 (Fla. 1982).